E-FILED
Wednesday, 15 March, 2023  02:15:15 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

MAR 6 2023
@ 9:45 AM

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| Dr. VALERIE HOLTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2023-LA-20 |
| | ) | |
| GIVEPULSE, INC., | ) | |
| | ) | **JURY TRIAL** |
| Defendant. | ) | **DEMANDED** |

## ALIAS SUMMONS

**To the Defendant:**   **James McGirr, Registered Agent**
**GivePulse, Inc.**
**4814 Red River St.**
**Austin, TX 78751**

YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of the Circuit Court, Champaign County Courthouse, 101 E. Main Street, Urbana, Illinois, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the Officer: This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date. 3/3/2023

_____, 2023F

(Seal)     Susan W. McGrath

Clerk of the Circuit Court

Ronald . Langacker
Langacker Law, Ltd.
210 N. Broadway Ave.
Urbana, Illinois 61801
(217) 954-1025
ron@langackerlaw.com

Date of Service: _____, 2023
(to be inserted by officer on copy left
with defendant or other person).

Delivered on:
03 / 06 / 2023
By: VS   PSC# 12617

## RETURN OF SERVICE

I certify that I served this Summons on the Respondent as follows (check box):

❑    (A)    (Individual respondent – personal):
By leaving a copy of said notice with each individual respondent personally.

❑    (B)    (Individual respondent – abode):
By leaving a copy of said summons at the usual place of abode of each individual respondent with a person of his/her family, of the age of thirteen (13) years or upwards, informing that person of the contents, and also by sending a copy of the summons in a sealed envelope with postage fully prepaid, addressed to each individual respondent at his usual place of abode.

❑    (C)    (Other service):
_____
_____

Name of Defendant: _____
Name of Person Summons given to: _____
Sex: _____        Race: _____        Approximate Age: _____
Place of Service: _____
Date of Service: _____
Date of Mailing: _____

_____
_____

By _____

FILED

SIXTH JUDICIAL CIRCUIT

2/22/2023 2:51 PM
By: AL

Susan W. McGrath

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| **Dr. VALERIE HOLTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | 2023LA000020 |
| **v.** | ) | **Case No.** |
| | ) | |
| **GIVEPULSE, INC.,** | ) | |
| | ) | |
| | ) | **JURY TRIAL** |
| **Defendant.** | ) | **DEMANDED** |

### COMPLAINT

NOW COMES Plaintiff, Dr. Valerie Holton, by and through her attorney of record, Ronald S. Langacker of Langacker Law, and for her Complaint against Defendant, GivePulse, Inc., hereby states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to the Illinois Human Rights Act, 775 ILCS 5/2-102, the Illinois Workforce Transparency Act, 820 ILCS 96/1-25, and 735 ILCS 5/2-209 of the Illinois Code of Civil Procedure.

2. Venue is proper pursuant to 735 ILCS § 5/2-101 because all operative acts underlying this Complaint occurred in Champaign County, Illinois.

### ADMINISTRATIVE PREREQUISITES

3. Plaintiff filed a timely Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission on March 11, 2022 (Exhibit A).

4. Plaintiff received a "Notice of Substantial Evidence" from the Department on January 6, 2023 (Exhibit B). All administrative prerequisites to filing suit have been met and this case is timely.

1

## PARTIES

5. Plaintiff, Dr. Valerie Holton ("Plaintiff" or "Valerie"), is a protected party under the Illinois Human Rights Act, in that her sex/gender is Female.

6. Defendant, GivePulse, Inc. ("GivePulse"), is an employer as that term is defined within 775 ILCS 5/2-101. Defendant provides an online platform to match organizations and volunteers with volunteer opportunities.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff was hired as the Director of Success and Research on July 6, 2021. Plaintiff worked remotely from her residence in Illinois and performed her job duties online. Plaintiff's direct supervisor was George Luc ("Luc") (Male). As a part of her job duties, Plaintiff supervised other employees, including Mariana Prieto ("Mariana") (Female).

8. At all times during the course of her employment, Plaintiff met and exceeded the job requirements of her position and the expectations of her employment. Plaintiff met and communicated regularly with Luc. At no point did Luc indicate that Plaintiff was not meeting the expectations of her employment.

9. On Friday, December 3, 2021, at approximately 10:15 a.m., all GivePulse employees participated in a video conference call (referred to as a "Standup" meeting).

10. During the meeting, Luc publicly stated, "If Mariana didn't have [her boyfriend], I would go after her" to the other attendees of the meeting.

11. Plaintiff believed that Luc's public comment toward Mariana constituted unwelcome sexual harassment. Mariana had previously indicated to Plaintiff that Luc had behaved inappropriately toward her on other occasions.

12. Shortly after the Standup meeting, at 10:47 a.m., Plaintiff sent an email to Luc notifying him his comment was inappropriate, and that he should apologize to Mariana (Exhibit C).

2

13. At 11:00 a.m., Luc messaged Mariana and Plaintiff in a separate Slack channel and stated that Plaintiff had informed him that his statement was inappropriate. He apologized for offending Mariana. Mariana responded that Luc's statement had made her uncomfortable.

14. Less than three hours later, Luc contacted Plaintiff and advised that her employment was terminated, effective immediately. Defendant emailed Plaintiff to confirm their conversation (Exhibit D).

15. Luc attached a separation agreement ("Agreement") to his email to Plaintiff, and informed Plaintiff that she was required to sign the same within 24 hours (Exhibit E). The Agreement contained a confidentiality provision whereby Plaintiff would keep confidential and not disparage any employee, representative, or officer of Defendant to a third party.

16. The proposed separation agreement tendered to Plaintiff was not in compliance with Illinois law as the agreement violated the Workforce Transparency Act, 820 ILCS 96/1-30.

## COUNT I

### (Retaliation for Opposing Unlawful Discrimination in Violation of the Illinois Human Rights Act)

17. Plaintiff repeats and re-alleges the previous paragraphs in this Complaint as if fully set forth herein.

18. At all relevant times, Plaintiff met and exceeded the employment expectations of the Defendant.

19. On December 3, 2021, Plaintiff emailed Defendant's CEO, George Luc, to inform him that she believed he had made an inappropriate comment toward another female employee during that morning's meeting.

20. Plaintiff engaged in a protected activity on December 3, 2021, by reporting conduct which she reasonably believed to be sexual harassment.

21. A few hours after notifying Luc of the inappropriate comment,  Plaintiff was abruptly discharged.

3

22. Plaintiff was terminated by the same person who she had reported had engaged in sexual harassing conduct, and to whom she had addressed her complaint.

23. Shortly after her termination, Plaintiff was provided with a Settlement Agreement and given only 24 hours to review and sign the same.

24. Both a causal and temporal connection exist between Plaintiff's protected activity and Dr. Holton's termination on December 3, 2021.

25. Plaintiff has suffered an adverse employment action, as she was terminated from her employment on December 3, 2021.

26. Plaintiff was damaged by Defendant's unlawful actions, in that she lost wages and benefits, has incurred costs and fees, and also experienced emotional distress after the employer retaliated against her for engaging in a protected activity, and because the employer disregarded her rights and protections under the IHRA.

## COUNT II
### (Violation of the Workforce Transparency Act)

27. Plaintiff repeats and re-alleges the previous paragraphs in this Complaint as if fully set forth herein.

28. At all times herein, the State of Illinois had enacted the Illinois Workforce Transparency Act, 820 ILCS 96/1-30, which states settlement agreements which include promises of confidentiality related to an unlawful employment practices, are invalid unless they comply with the provisions of the Act, enumerated within (a)(1)-(6).

29. On December 3, 2021, Plaintiff was presented a settlement agreement from the Defendant that mandated she sign the agreement within twenty-four (24) hours (Exhibit E). Plaintiff refused to sign the agreement.

30. The proposed separation agreement tendered to Plaintiff expressly violated the provisions of the Workforce Transparency Act, 820 ILCS 96/1-30 including, but not limited to, the following:

4

a. The confidentiality provision within the agreement is not mutually beneficial to both parties (820 ILCS 96/1-30(a)(1));

b. The agreement does not state that the Plaintiff has the right to have an attorney or representative of his or her choice review the agreement prior to execution (820 ILCS 96/1-30(a)(2));

c. The agreement does not reference any bargained-for consideration in exchange for the Plaintiff's confidentiality (820 ILCS 96/1-30(a)(3));

d. The agreement requires Plaintiff waive any claims of unlawful employment practices that accrue after the date of the agreement's execution (820 ILCS 96/1-30(a)(4));

e. The agreement does not provide Plaintiff 21 days to consider the agreement before signing (820 ILCS 96/1-30(a)(5)); and

f. The agreement does not state that it isn't enforceable or effective until after the 7-day revocation period has expired. (820 ILCS96/1-30(a)(6)).

31. An employee who successfully challenges the enforceability of an agreement or obligation under the WTA is allowed to recover attorneys' fees and costs incurred in the action. 820 ILCS 96/1-35. Plaintiff has incurred attorneys' fees and costs in pursuing this action against Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dr. Valerie Holton, prays this Honorable Court grant the following relief:

A. Award damages to Plaintiff for loss of pay and benefits incurred as a result of the discrimination against her as alleged in this Complaint;

B. Order that Plaintiff be reinstated to her previous employment position;

C. Grant Plaintiff a judgment for compensatory damages as to each count in an amount sufficient to fully compensate her, and grant Plaintiff a judgment against Defendant for punitive damages;

5

D. Assess against Defendant and in favor of Plaintiff such liquidated and exemplary damages as may be provided by law for the willful violations of the law committed by it;

E. Award Plaintiff damages for pain and suffering;

F. Award Plaintiff pre-judgment interest for the defined sum of wages and benefits lost;

G. Grant Plaintiff reasonable attorneys' fees, costs, and fees, pursuant to the Illinois Human Right's Act and the Illinois Workforce and Transparency Act; and

H. Such other relief as this Court deems necessary and proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

By: /s/Ronald S. Langacker
Ronald S. Langacker
Attorney for Plaintiff

Ronald S. Langacker
Langacker Law, Ltd.
210 N. Broadway
Urbana, Illinois 61801
(217) 954-1025
ron@langackerlaw.com

6

**VERIFICATION**

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matter, the undersigned certifies as aforesaid that I verily believe the same to be true.

2/22/23
Dated

Valerie Holton

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| **Dr. VALERIE HOLTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **GIVEPULSE, INC.,** | ) | |
| | ) | |
| | ) | **JURY TRIAL** |
| **Defendant.** | ) | **DEMANDED** |

### Affidavit Pursuant to Illinois Supreme Court Rule 222(B)

Pursuant to Supreme Court Rule 222 (B), counsel for the above-named plaintiff certifies that plaintiff seeks money damages in excess of Fifty Thousand and 00/100ths Dollars ($50,000). FURTHER AFFIANT SAYETH NOT.

Ronald S. Langacker

Subscribed and sworn to before me
on ___February 22___, 2023.

JESSICA WISE
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
August 05, 2024

Not     ublic

8

# ILLINOIS DEPARTMENT OF
# ◖Human Rights

JB Pritzker, Governor
James L. Bennett, Director

March 16, 2022

VALERIE HOLTON
C/O RONALD S. LANGACKER
LANGACKER LAW
210 N. BROADWAY AVE
URBANA, IL 61801

RE:    Charge No.: 2022SF1005
       Respondent: GIVEPULSE INC
Complaint or Civil Action Filing Dates: **3/11/2023 through 6/8/2023**

Dear Complainant:

You have filed a discrimination charge under the Human Rights Act. A copy of the charge has been served on the Respondent. Keep this letter for reference if you need to telephone the Illinois Department of Human Rights ('IDHR'). If there is an 'A', 'E', or 'F' in your charge number, we are enclosing an important notice from the Federal Equal Employment Opportunity Commission ('EEOC') because your charge has been automatically filed with that agency.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge. If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition. If we do not have copies of these documents in your file, we have included copies with this notice.

1)     Verification of Disability.
Please give the Verification of Disability form to your physician for completion. Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)     Consent form.
The consent form allows IDHR to review your physician's documentation. Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

When a fact-finding conference is scheduled, you will be advised of the date. It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

You have the right to file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court if IDHR has not completed your case by issuing its report of findings within 365 days from the date you filed your PERFECTED signed and notarized charge or within any extension of that time to which you and the Respondent have agreed in writing.

# Exhibit A

Within 90 days of the expiration of the 365 days or extension (see above paragraph), if you choose, you may file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court. We have calculated the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside of this 90-day period, the Commission may dismiss your complaint; or, your civil action may be deemed untimely

Once 455 days (or the extended time) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Commission, or commenced a civil action in the appropriate circuit court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case. If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with Section (7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Commission on IDHR, on the same day that you file a complaint with the Commission. The Commission will then schedule a hearing for your case before an Administrative Law Judge. If you commence a civil action in a circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. If you file a complaint with the Human Rights Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

1509-0059 IN-6 NON-MED
Rev. 9/7

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

# 22M0311.10

| AGENCY | CHARGE NUMBER: |
|---|---|
| ✓ IDHR | 2022SE1005 |
| ✓ EEOC | |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (Indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (Include area code) |
|---|---|
| DR. VALERIE HOLTON | (217) 318-9234 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 711 W. INDIANA AVENUE | URBANA, ILLINOIS 61801 | /   /  <br> M   D   YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (Include area code) |
|---|---|---|
| GIVEPULSE, INC. | | (512) 765-5145 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 5400 N. LAMAR BLVD. | AUSTIN, TEXAS 78751 | |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| RETALIATION | DECEMBER 3, 2021 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

SEE ATTACHED.

DEPT. OF HUMAN RIGHTS
INTAKE DIVISION
March 11, 2022

**RECEIVED**

BY:_____

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME <br> THIS 1ᵗʰ DAY OF March 2022. |
|---|---|

JESSICA WISE
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
August 05, 2024
**NOTARY STAMP**

3-11-22

| SIGNATURE OF COMPLAINANT | DATE |
|---|---|

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

EEO-5 FORM (Rev.   /09-INT)

## I.    BACKGROUND INFORMATION COMMON TO ALL COUNTS

1. Complainant, Dr. Valerie Holton ("Complainant" or "Valerie"), is a protected party under the Illinois in that her sex/gender is Female.

2. Respondent, GivePulse, Inc. ("GivePulse"), is an employer as that term is defined within 775 ILCS 5/2-101, and whose corporate headquarters is located in Texas. Respondent is provides an online software platform that assists organizations and their partners in matching volunteers with volunteer opportunities and monitoring their impact.

3. Complainant was hired as the Director of Success and Research of GivePulse on July 6, 2021. Complainant's direct supervisor was George Luc ("George") (Male). Complainant supervised other employees, including Mariana Prieto ("Mariana") (Female).

4. On Friday, December 3, 2021, at approximately 10:15 a.m., GivePulse employees participated in a group discussion (referred to as a "Standup" meeting) on Slack. During the meeting, George stated, "If Mariana didn't have [her boyfriend], I would go after her" and "it might be an HR issue."

5. Complainant believed that George's comment toward Mariana was unwelcome harassment due to Mariana's sex/gender (Female).

6. Shortly after the Standup meeting, at 10:47 a.m., Complainant sent an email to George stating that George's comment was inappropriate and that he should apologize to Mariana (Exhibit 1).

7. At 11:00 a.m., George messaged Mariana and Complainant in a separate Slack channel and stated that Complainant had informed him that his statement was inappropriate. He apologized for offending Mariana. Mariana responded that George's statement had made her uncomfortable, but she appreciated his apology (Exhibit 2).

8. Shortly before 2:40 p.m., George called Complainant and advised that Complainant's employment was terminated, effective immediately. Respondent emailed Complainant to confirm their conversation (Exhibit 3). The email included an attached separation agreement that George informed Complainant would need to be signed within 24 hours (Exhibit 4).

9. The proposed separation agreement tendered to Complainant expressly violated the provisions of the Workforce Transparency Act, 820 ILCS 96/1-30 including, but not limited to, the following

   a. The confidentiality provision within the agreement is not mutually beneficial to both parties (820 ILCS 96/1-30(a)(1));

   b. The agreement does not state that the Complainant has the right to have an attorney or representative of his or her choice review the agreement prior to execution (820 ILCS 96/1-30(a)(2));

c.  The agreement does not reference any bargained-for consideration in exchange for the Complainant's confidentiality (820 ILCS 96/1-30(a)(3));

d.  The agreement requires Complainant waive any claims of unlawful employment practices that accrue after the date of the agreement's execution (820 ILCS 96/1-30(a)(4));

e.  The agreement does not provide Complainant 21 days to consider the agreement before signing (820 ILCS 96/1-30(a)(5)); and

f.  The agreement does not state that it isn't enforceable or effective until after the 7-day revocation period has expired. (820 ILCS96/1-30(a)(6))

## VIII.  A. ISSUE / BASIS

*Discharge – December 3, 2021, in retaliation for opposing unlawful discrimination.*

### B. PRIMA FACIE ALLEGATIONS

1.  On December 3, 2021, Complainant made a complaint of inappropriate conduct on the part of GivePulse CEO, George Luc. Complainant reported the discriminatory conduct directly to George Luc via email. Complainant believed George's inappropriate conduct to be due to Marina's gender.

2.  Later on December 3, 2021, Complainant was discharged by George Luc. The reason given for the discharge was that Complainant's position had been eliminated.

3.  Both a causal and temporal connection exist between Complainant's protected activity and Complainant's termination. Complainant's termination followed approximately 4 hours after her complaint of harassment, and was instigated by the person who engaged in the harassing conduct and to whom Complainant had reported the conduct. These connections, as well as the fact that Respondent only provided Complainant 24 hours to agree to a Settlement Agreement (which would have violated the Illinois Workforce Transparency Act) raise an obvious inference of retaliatory motivation for Complainant's termination.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

JCK Federal Building
230 S. Dearborn
**Suite 1866 (Enforcement, Sate and Local & Hearings)**
Suite 2920 (Legal & ADR)
Chicago, IL 60604
Chicago Direct Dial: (312) 872-9777
Enforcement/File Disclosure Fax: (312) 588-1260
Website: www.eeoc.gov

IMPORTANT NOTICE.  PLEASE READ CAREFULLY.  KEEP THIS NOTICE WITH YOUR OTHER RECORDS OF THIS CHARGE.  THIS MAY BE THE ONLY NOTIFICATION FROM EEOC.

IDHR CHARGE NUMBER:          2022SF1005          VALERIE HOLTON

# EEOC NOTICE OF CHARGE FILED

You are filing a charge of employment discrimination with the Illinois Department of Human Rights (IDHR).

As a result of an agreement between the Illinois Department of Human Rights (IDHR) and the U. S. Equal Employment Opportunity Commission (EEOC), the EEOC will also have a record of IDHR's charge of discrimination.

You are encouraged to cooperate with IDHR in the investigation of your charge.  The final findings and orders of that agency may be adopted by the EEOC.

IDHR will process your charge.  Under section 1601.76 of EEOC's regulations, you are entitled to request that EEOC review IDHR's investigation and findings.  To obtain this review, you must request it by writing to this office within 15 days of your receipt of IDHR's final findings of your case.  If we do not receive such a request for a review, EEOC will likely accept IDHR's findings without any review or any other processing by EEOC.

EEOC regulations require that you notify us of any change in address and keep us informed of any prolonged absence from your current address.  Your cooperation in this matter is essential.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPOINTMENT IS REQUIRED, CALL (312) 869-8000 OR 1-800-669-4000.

EEOC NOTICE



ILLINOIS DEPARTMENT OF
**Human** Rights

JB Pritzker, Governor
James L. Bennett, Director

January 06, 2023

Ronald S. Langacker
Langacker Law
210 N. Broadway Ave.
Urbana, IL 61801

Ethan Zelizer
HR Law Counsel
29 S. Webster St., Suite 350-C
Naperville, IL 60540

RE: Valerie Holton vs. GivePulse, Inc., 2022SF1005

### NOTICE OF SUBSTANTIAL EVIDENCE AS TO COUNT A

YOU ARE HEREBY NOTIFIED, the Director of the Illinois Department of Human Rights ("Department") has concluded that there is Substantial Evidence that a civil rights violation has been committed.

**Complainant has the following options:**

1) Within thirty (30) days of receipt of this Notice of Substantial Evidence, notify the Department in writing if you wish the Department to file a complaint with the Illinois Human Rights Commission ("Commission") pertaining to the allegation(s). Your request should be sent to: Chief Legal Counsel, Illinois Department of Human Rights, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

The Illinois Human Rights Act ("Act") permits the Department to conduct conciliation to give the parties an opportunity to settle the case before a complaint is filed with the Commission. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties via telephone. Should you notify the Department as outlined above, that you wish the Department to file a complaint with the Commission, I have been designated by the Director to CONCILIATE this case.

# Exhibit B

You also have the opportunity to use the mediation process to resolve your case if both parties agree and time-constraints for filing a complaint according to the Act can be met. Mediation is a form of alternative dispute resolution. Parties to a Department charge meet voluntarily in an informal atmosphere with a certified mediator to discuss voluntary settlement options to close the Department charge. All mediation settlement conferences are held in the Department's Chicago office. Please contact me if you are interested in resolving your case through mediation.

All settlement efforts are confidential and must be concluded within ninety (90) days of receipt of this notice. If it is determined there is not a reasonable possibility of settlement, I will prepare a complaint against Respondent, file it with the Commission and serve a notice of such filing on all parties, pursuant to Section 7A-102(F) of the Act. It is then the responsibility of the parties to proceed forward with the case in the Commission.

**Or**

2) Complainant may within ninety (90) days of receipt of this Notice, file a complaint with the Commission. If Complainant files a complaint with the Commission, Complainant must also give notice of such filing to the Department.

**Or**

3) Complainant may commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county in which the civil rights violation was allegedly committed.

Michael A. Vernon
Staff Attorney
(312) 814-6273

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**
**INVESTIGATION REPORT**

| | | | |
|---|---|---|---|
| **Complainant:** | Valerie Holton | **IDHR No.:** | 2022SF1005 |
| **Respondent:** | GivePulse, Incorporated | **EEOC No.:** | 21BA20462 |

**Investigator:** CJM        **Supervisor:** ESK        **Date:** 11/ 7/22

**Issue/Basis:**                              **Finding:**

A.  Discharge/ Retaliation          A.  Substantial Evidence

**Jurisdiction:**

| | |
|---|---|
| Alleged violation: | December 3, 2021 |
| Charge filed: | March 11, 2022 |
| Charge perfected: | March 11, 2022 |
| Amendments: | N/A |
| Number of employees: | 20 |

**Verified Response:**

Note: Pursuant to Public Act 100-0492, a verified response is not required for a charge filed on or after September 8, 2017.

**Employment Data:**

Through correspondence, Respondent indicated that it employed 20 individuals.

**Uncontested Facts:**

1.  Respondent is an online platform that helps people give back to the community through fundraising.
2.  Complainant was hired as a Director of Success and Research on July 6, 2021.
3.  Complainant was discharged on December 3, 2021, by George Luc, Co-Founder and Chief Executive Officer, and James McGirr, Co-Founder and Chief Technology Officer.

**Complainant's Allegations-Count A:**

Complainant, a Director of Success and Research, alleges that on December 3, 2021, Respondent discharged her in retaliation for engaging in a protected activity. Complainant allege that her overall work performance was satisfactory and met Respondent's expectations. Complainant alleges that on December 3, 2021, she engaged in a protected activity when she filed an internal

Charge No.: 2022SF1005
Page 2 of 8

complaint of harassment towards a co-worker with George Luc ("Luc"), Co-Founder and Chief Executive Officer. Complainant alleges that on December 3, 2021, she was discharged by Luc and Jane McGirr ("McGirr"), Co-Founder and Chief Technology Officer. Complainant alleges that the adverse action followed by her involvement in a protected activity, thereby raising an inference of retaliatory motivation.

**Respondent's Defenses-Count A:**

Respondent's articulated non-discriminatory reason for its action is that it denies that Complainant was discharged in retaliation. Respondent contends that Complainant was discharged for poor performance. Respondent contends that Complainant's position was eliminated.

**Investigation Summary-Count A:**

A.    **Complainant's Evidence.**

   1.    Complainant stated that she was hired on July 6, 2021, as a Director of Research and Success. Complainant stated that her direct supervisor was Luc. Complainant stated that she was responsible for supervising a team that analyzed data marketing Respondent's services to new clients.

   2.    Complainant stated that she was the only individual at Respondent that worked as a Director of Research and Success.

   3.    Complainant stated that Respondent did not have any policies or any training mandates. Complainant stated that she was in charge of creating and implementing a policy manual, but it had not been completed by the time she was discharged.

   4.    Complainant stated that she did not receive a performance evaluation. Complainant stated that during her employment at Respondent, she had been meeting expectations. Complainant stated that she believed this because her whole team's performance had improved. Complainant further stated that she met with Luc to discuss her team's performance once a week and she was not advised of any concerns about her performance and/ or her team's performance.

   5.    Complainant stated that on December 3, 2021, she was present at Respondent's virtual daily team meeting. Complainant stated that she witnessed Luc tell Mariana Prieto ("Prieto") that if she did not have her boyfriend, he would go after her and it would be a Human Resource Department problem.

   6.    Complainant stated that she noticed that Prieto was upset by the interaction, and she e-mailed Luc. Complainant stated that in her email to Luc, she told him that what he had said to Prieto was inappropriate and he should apologize for the comment. Complainant stated that she also told Luc that his comment toward Prieto was a Human Resources Department concern. Complainant stated that she was careful with how she worded her email in hopes that it would not affect her job. Complainant's email to Luc **(Exhibit A)** indicates that on December 3, 2021, Complainant emailed Luc, and advised that his comment toward Prieto was of

Charge No.: 2022SF1005
Page 3 of 8

concern and suggested that Luc should apologize and acknowledge that the comment was not appropriate. Complainant wrote that she reflected on this and, as a female colleague, she thought it best to send the follow up.

7.   Complainant stated that she did not specifically say that she felt that Luc's comment was harassment towards Prieto. Complainant stated that she did not specifically say harassment because she was afraid of retaliation because she had witnessed Luc retaliate against other employees to the point that each employee had lost their jobs.

8.   Complainant stated that after her email to Luc, Luc sent a Slack message to Prieto and Complainant, apologizing for his comment during the stand-up meeting. In his Slack message **(Exhibit B)**, Luc wrote that it was brought to his attention that his comment during the slack meeting was inappropriate and that it was not his intention to offend anyone. Prieto responded that it did make her uncomfortable and that she appreciated the apology.

9.   Complainant stated that on December 3, 2021, about four hours after she had emailed Luc about his comment toward Prieto, he sent her a message indicating that he wanted to talk with her over Facetime. Complainant stated that a few moments later, she received a message to join a call with Luc and McGirr.

10.  Complainant stated that she believed that this video call would be about the comment that Luc had directed toward Prieto. Complainant stated that when she joined the video call, she was told that Respondent was restructuring the company and would be eliminating her position. Complainant stated that Luc sent her a follow up email about her discharge. Luc's email to Complainant **(Exhibit C)** indicates that on December 3, 2021, Respondent eliminated Complainant's current position and discharged her.

11.  Complainant stated that she felt she was being retaliated against because the discharge was without merit and happened shortly after she reported the harassment she witnessed of her co-worker. Complainant stated that after the phone call she received an e-mail indicating that her position was being eliminated due to a restructuring of Respondent's company and that she had 24 hours to sign a settlement agreement. Complainant stated that she did not sign the settlement agreement.

12.  Complainant stated that she does not know of any other employee who had made an internal complaint of harassment. Complainant stated that she did not know of any other Director of Research and Success who had been discharged for the same or similar reason.

B.   **Respondent's Evidence.**

1.   Luc stated that Respondent is a platform that helps people give back to the community through fundraising. Luc stated that Respondent is a small business. Luc stated that Complainant was hired on July 6, 2021, as a Director of Success and Research and was responsible for supervising a team that analyzed data and

Charge No.: 2022SF1005
Page 4 of 8

> marketed Respondent's services to new clients. Luc stated that he was
> Complainant's direct supervisor.

Staff Note:
On September 12, 2022, staff requested Respondent's job description for Director of Success and Research. On September 28, 2022, staff advised Respondent that if the requested information was not received, the Department would make a decision with the information already on hand. Respondent did not provide Respondent's job description for Director of Success and Research as requested.

2.    Luc stated that Respondent has no tolerance for retaliation. Luc stated that employees were to report incidents of discrimination and retaliation to him. Luc stated that if Respondent received a complaint of discrimination and/or retaliation, he would take immediate action and attempt to correct it. Luc stated that there were no disciplinary consequences for violating the non-discrimination and/ or retaliation policies.

Staff Note:
On September 12, 2022, staff requested Respondent's Equal Employment Opportunity, Retaliation, Disciplinary, Discharge and remote work policy. On September 28, 2022, staff advised Respondent that if the requested information was not received, the Department would make a decision with the information already on hand. Respondent did not provide Respondent's Equal Employment Opportunity, Retaliation, Disciplinary, Discharge and remote work policy as requested.

3.    Luc stated that all employees are provided with Respondent's policies and procedures during onboarding and that they had access to the policies through the shared Google drive and through the human resource system. Luc stated that Respondent's discharge policy is in its employee handbook.

Staff Note:
On September 12, 2022, staff requested Respondent's source documentation of onboarding materials (i.e. employment contract, job offer letter, payroll records, etc.) that was provided to Complainant upon her being hired. On September 28, 2022, staff advised Respondent that if the requested information was not received, the Department would make a decision with the information already on hand. Respondent did not provide Respondent's source documentation of onboarding materials provided to Complainant upon hire, which classified the terms of the work she performed remotely for Respondent as requested.

4.    Luc stated that during her employment, it was difficult for Complainant to make her marketing goals. Luc stated that Complainant would be defensive when she received feedback about her team when they did not meet the required key performance indicator (KPI), and objective key results (OPR). Luc stated that Complainant's second quarter's KPIs and OPRs pointed toward a negative remark where she would not make goal.

Charge No.: 2022SF1005
Page 5 of 8

Staff Note:
On September 12, 2022, staff requested Complainant's performance evaluations and disciplinary records. On September 28, 2022, staff advised Respondent that if the requested information was not received, the Department would make a decision with the information already on hand. Respondent did not provide Complainant's performance evaluations and disciplinary records as requested.

5.     Luc stated that in October 2021, there had been a meeting between Complainant, James McGirr, Chief Technology Officer & Co-Founder, and himself. Luc stated that during that meeting Complainant spoke about a title change and promotion to vice president. Luc stated that at that time Complainant had only been with the company for a few months and was told that she would need to prove herself before a title change could occur.

6.     Luc stated that in October 2021, he started to review the business needs of Respondent and realized that Respondent needed a strong marketing director. Luc stated that while reviewing Complainant's performance, it did not meet Respondent's marketing needs. Luc stated that he decided that there was no need for a Director of Success and Research and moved to eliminate the position. Luc stated that in November 2021, he spoke with Respondent's executives about the elimination termination of Complainant's position and waited for the approval.

7.     Luc stated that on December 2, 2021, he received communication from Respondent's executives to move forward with Complainant's termination. Luc stated that he started to write Complainant's termination on December 2, 2021, which was a difficult process to do.

8.     Luc stated that on December 3, 2021, Respondent held a team meeting called "stand up." Luc stated that during the meeting, there was a question proposed to recognize someone in the organization for their work. Lue stated that he was excited and happy that he told the group that "if Mariana did not have a boyfriend, he would go after her, and it would be a human resource problem."

Staff Note:
On September 12, 2022, staff requested source documents of any internal complaint of discrimination made by Complainant, including communications following the December 3, 2021, meeting on, Respondent's subsequent investigation, and the results of that investigation. On September 28, 2022, staff advised Respondent that if the requested information was not received, the Department would make a decision with the information already on hand. Respondent did not source documents of any internal complaint of discrimination made by Complainant, including communications following a meeting on December 3, 2021, and Respondent's subsequent investigation, and results as requested.

9.     Luc stated that on December 3, 2021, after the stand up meeting, Complainant e-mailed him about a co-worker feeling uncomfortable with a comment he had made during the meeting. Luc stated that in Complainant's email she did not use the words of harassment, discrimination and/ or sexual harassment. Luc stated that

Charge No.:  2022SF1005
Page 6 of 8

Respondent did consider this email an official report of harassment. Luc stated that Complainant did not violate any policies or procedures by addressing him about the comment made.

10.  Luc stated that as soon as Complainant brough this issue to his attention, he took action to correct the situation. Luc stated that he apologized to Prieto about the comment.

11.  Luc stated that he had a scheduled a phone meeting with Complainant and McGirr set for December 3, 2021. Luc stated that, during the phone meeting, he informed Complainant that her position was being eliminated and that her employment was terminated. Luc stated that after the phone meeting with Complainant, he e-mailed her the same information and provided Complainant with a severance package. Luc stated that he offers a severance package to all employees who are terminated.

Staff Note:
On September 12, 2022, staff requested source documentation of Complainant's discharge (i.e. discharge document, payroll records, etc.). On September 28, 2022, staff advised Respondent that if the requested information was not received, the Department would make a decision with the information already on hand. Respondent did not provide source documentation of Complainant's discharge (i.e. discharge document, payroll records, etc.) as requested.

12.  Luc stated that there have not been any other employees discharged for the same or similar reason.

Staff Note:
On September 12, 2022, staff requested source documentation of Director of Success and Research (or comparable position) discharged for elimination of position (or similar policy violation) from December 2019 to December 2021, and whether they engaged in a protected activity. On September 12, 2022, staff requested source documentation of other employees discharged from December 2019 to December 2021, including their job title, reason for discharge, and whether they had engaged in a protected activity. On September 28, 2022, staff advised Respondent that if the requested information was not received, the Department would make a decision with the information already on hand. Respondent did not provide source documentation of Director of Success and Research (or comparable position) discharged for elimination of position (or similar policy violation) from December 2019 to December 2021, and whether they engaged in a protected activity and source documentation of other employees discharged from December 2019 to December 2021, including their job title, reason for discharge, and whether they had engaged in a protected activity as requested.

C.   **Complainant's Rebuttal.**

1.   Complainant stated that during her employment at Respondent she met almost all of her key performance indicators (KPI), and objective key results (OPR), she may have not made one month.

2.   Complainant stated that she was never informed that Respondent had issues with her performance or her team's performance.

Charge No.:  2022SF1005
Page 7 of 8

**Analysis:**

Respondent contends that it prohibits retaliation. The investigation revealed that Complainant worked at Respondent as a Research and Success Director. Respondent contends that in the months prior to December 2021, Complainant was struggling to reach marketing goals and that in November 2021, Respondent started the process to discharge Complainant. Complainant denies that any performance concerns were brought to her attention and Respondent has not provided evidence of its discharge policies/procedures or of Complainant's alleged performance deficiencies. The investigation revealed that on December 3, 2021, Complainant sent an e-mail to George Luc, Chief Executive Officer, about an inappropriate comment he made toward co-worker Mariano Prieto, advising that if Prieto did not have a boyfriend, he would "go after her." The investigation revealed that Complainant advised Luc that she had reflected on his comment as a female colleague, and believed it was a concern from a human resource perspective. The investigation revealed that on the same day of the complaint, Complainant was discharged, being advised that her position had been eliminated.

**Findings and Conclusion-Count A**:

A finding of **Substantial Evidence** is recommended because

It is uncontested that Complainant was discharged by Respondent on December 3, 2021, hours after Complainant sent an email to Luc about an inappropriate comment he made to a female employee. Despite requests from the Department, Respondent did not provide documentation of Complainant's performance, her discharge or its applicable policies. Respondent did provide documentation of similarly situated employees discharged under similar circumstances. There is conflicting testimony between Complainant and Respondent regarding the circumstances surrounding Respondent's discharge of Complainant. Given the sufficiently short timeframe between her alleged protected activity and her discharge, this count is recommended to be heard by a trier of fact.

**Witness List:**

For Complainant:
Ronald S. Langacker
Langacker Law
210 North Broadway Avenue
Urbana, IL 61801
Email:  ron@langackerlaw.com

For Respondent:
Ethan G. Zelizer
HR Law Counsel
29 South Webster Street, Suite 350-C
Naperville, IL 60540
Email:  ethan@hrlawcounsel.com

   A.  Valerie Holton                                                                CPI/FFC
      c/o Ronald S. Langacker
      Langacker Law
      210 North Broadway Avenue
      Urbana, IL 61801
      P: 217-954-1025

   B.  George Luc, Chief Executive Officer & Co-Founder                     FFC
      c/o Ethan G. Zelizer

Charge No.: 2022SF1005
Page 8 of 8

> HR Law Counsel
> 29 South Webster Street, Suite 350-C
> Naperville, IL 60540
> P: 630-551-8374

> C. James McGirr, Chief Technology Officer & Co-Founder          FFC
>    c/o Ethan G. Zelizer
>    HR Law Counsel
>    29 South Webster Street, Suite 350-C
>    Naperville, IL 60540
>    P: 630-551-8374

**Exhibits:**

A.    Complainant's Email to Luc

B.    Luc's Slack Message

C.    Luc's email to Complainant

MERIT REPORT.docm
12/17

 Gmail

Valerie Holton <valerie@valerieholton.com>

## Follow up to today's stand-up

2 messages

**Valerie Holton** <valerie@givepulse.com>                                      Fri, Dec 3, 2021 at 10:47 AM
To: George Luc <george@givepulse.com>
Bcc: valerie@valerieholton.com

George,

In today's stand up you said that "if Mariana didn't have Shawn that [you] would go after her". Your follow up was that saying "that might be an HR issue". I reflected on this and as a female colleague, I thought it best to send this follow-up with the aim of supporting you in your role as the CEO. I agree, it is a concern from an HR perspective. I suggest that you follow up with her to apologize and acknowledge that was not an appropriate comment.

Valerie

--

--

**Valerie Holton, PhD, LCSW**

Director of Success & Research       Valerie@givepulse.com

GivePulse, Inc.       givepulse.com

She, Her, Hers

# Exhibit C