### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| **VALERIE HOLTON,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **No.: 2:23-cv-2057-CSB-EIL** |
| | ) | |
| **GIVEPULSE, INC.,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

The Defendant, GivePulse, Inc. ("GivePulse") submits this brief in opposition to Plaintiff's Motion for Summary Judgment, seeking partial judgment on Count I, retaliation in violation of the Illinois Human Rights.  Holton's Complaint alleges that GivePulse retaliated against her for raising a concern with GivePulse's CEO, George Luc.

Luc and James McGirr (GivePulse's CTO) began discussing the elimination of Holton's position in late November 2021.  The decision to terminate Holton was made on December 2, 2021, after McGirr and Luc spoke that evening.  Luc prepared the termination documentation in the early morning hours of December 3, 2021, well before Holton's alleged protected activity later that day.

Accordingly, Plaintiff's motion for summary judgment should be denied based on five independently dispositive reasons.  First, Holton has not presented and cannot present evidence of retaliatory intent by GivePulse; i.e., that GivePulse terminated her because she expressed her concerns about a comment that Luc made at a stand-up meeting.  Second, Holton was not meeting GivePulse's legitimate expectations at the time she was terminated. Third, Holton cannot identify any similarly situated individuals who failed to meet GivePulse's legitimate expectations and who was not terminated.  Fourth, GivePulse terminated Holton for legitimate, non-discriminatory

reasons.  Fifth, there is no evidence of pretext of retaliation.  .

Ultimately, Holton cannot prove that that she was terminated because of her alleged protected activity. As the Seventh Circuit explains, "summary judgment is the put up or shut  up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013) (internal quotations omitted).  Holton has nothing to "put up."  Instead, she simply disagrees with GivePulse's decision to terminate her and relies heavily on the temporal proximity between Holton's alleged protected activity and her termination just hours later. There is no doubt that the facts here have provided the parties and the Court with one of the shortest gaps in time between the alleged protected activity and the adverse employment action.  However, "*[p]ost hoc ergo propter hoc* is not enough to support a finding of retaliation—if it were, every employee would file a charge just to get a little unemployment insurance."  *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998). "Timing may be an important clue to causation, but does not eliminate the need to show causation—and [Holton] really has nothing but the post hoc ergo propter hoc 'argument' to stand on. *Id.*

GivePulse's response to Plaintiff's alleged undisputed material facts  and its statement of additional material facts in this case are set forth in Defendant's Statement of Proposed Findings of Material Facts pursuant to Fed. R. Civ. P. 56(a) and (c).[11]

## <u>SUMMARY JUDGMENT STANDARD</u>

A court may grant summary judgment only if the "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] References to Defendant's Statement of Proposed Findings of Material Facts are designated herein as (DPFOF ¶ _____ )

Fed.R.Civ.P. 56(a); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A moving party must show that no reasonable fact-finder could return a verdict for the non-moving party. *See Gazarkiewicz v. Town of Kingsford Heights, Ind.*, 359 F.3d 933, 939 (7th Cir.2004) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson*, 477 U.S. at 252.

Facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of the non-movant. *See Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir.2010); *see also Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009). ("At summary judgment, the 'admissible evidence presented by the nonmoving party must be believed and all reasonable inferences must be drawn in the non-movant's favor."). Therefore, this Court must view all facts and draw all reasonable inferences in the light most favorable to the Defendant when reviewing Plaintiff's Motion. *Gazarkiewicz v. Town of Kingsford Heights, Ind*., 359 F.3d 933, 939 (7th Cir.2004).

## **ARGUMENT**

A. Plaintiff cannot establish that her e-mail to Luc was the "but-for" cause of any alleged adverse action.

Plaintiff's *prima facie* case fails because she cannot establish the requisite element -- causation. As the Supreme Court established in *University of Texas Southwestern Medical Center v. Nassar*, to prove causation in a retaliation case, an employee must show that the only reason an employer took the action complained of was because the employee engaged in protected activity. *See* 133 S. Ct. 2517, 2534 (2013). In reaching this decision, the Court observed that if a lesser causation standard were implemented, frivolous retaliation claims could increase and, in turn, employers may be dissuaded from taking otherwise lawful disciplinary action. *See id.* at 2531-33

3

(noting that "claims of retaliation are being made with ever-increasing frequency," and emphasizing that the heightened "but-for" causation standard will serve to curb employees' inclinations to raise frivolous discrimination claims in order to forestall anticipated employment actions, such as discharges and demotions, by rendering employers fearful of defending against costly retaliation claims). Here, Plaintiff has not alleged sufficient facts to create an inference of any nexus between her alleged protected activity and her termination, let alone satisfy the "but-for" causation required.

Luc and James McGirr (GivePulse's CTO) began discussing the elimination of Dr. Holton's position in late November 2021. The decision to terminate Dr. Holton was made on December 2, 2021, after McGirr and Luc spoke that evening.  Luc prepared the termination documentation in the early morning hours of December 3, 2021, well before Dr. Holton's alleged protected activity later that day. Defendant presents several communications and documents establishing this chronology.





Below, you will find the document history of the termination memo, establishing the creation date and time stamps:



In addition, Luc prepared an outline to follow for his conversation with Dr. Holton **before** the alleged protected activity occurred.

**Dec 3rd, 2:30pm CT:**

George (I read this out):
*It was great to connect with you and Brian on what you believe your role should evolve into from a People Operations standpoint a few weeks back, what a reorg would look like and determining what's best for the business..*

*James and I thought about it for the past weeks. And we believe what's best for the business, especially at this stage of our trajectory and what we want to accomplish in the next year, we will be eliminating your position and will not be hiring for the Director of Success and Research position.*

*With that said, we think it's in the best interest to the business that we end your employment effective today. Note: You've only been with us for a few months but I want to ensure a smooth transition for your next career, we will cover your salary and unused vacation which will total to around 6700 as a severance package plus sustaining your health benefits until the end of this year*

*In addition, you should keep the standing desk and chair. For the laptop, you can decide if you want to purchase it from us for 1000 or we can have you ship it back to us.*

*After this call, you'll get an email listing out the details and an agreement for you to sign so we can pay you the severance package. I will inform the team at the end of the day.*

*Lastly,*
*I really appreciate your friendship, all of your accomplishments and the work you have done to help GivePulse thus far. I wish you the best of luck.*

*And I'll end it right here. We'll start deactivating your accounts. Do you have any questions?*

B.  <u>The alleged protected activity was dealt with swiftly and professionally and had no bearing</u>

<u>on the earlier decision to eliminate the director of success & research</u>.

Luc holds daily meeting where the staff talk about what the activities of the day. On Fridays or holidays, the meeting organizers have the opportunity to include a question for everyone. On Dec 3rd, 2021 (a Friday), the request was to provide a compliment or fun memory of Mariana (who at that time had worked for GivePulse for 2 years). For his part, Luc admittedly made an inappropriate comment when attempting to compliment Mariana. Luc stated:

> James and I appreciate Mariana who always works so hard for us and even helps celebrate the holidays. Back in the day, Nabil, Erica and I and Mariana worked really hard late in the evening to find a solution for a client at 1130pm and into the late nite and appreciate her. Mariana, if you didn't have Sean I'd go after you! I know this is HR! We hope you work here for life and we'll do everything we can to keep you here.

This comment was made at approximately 11:30 a.m. The meeting ended shortly thereafter. The alleged protected activity occurred at 11:47 a.m. with an e-mail from Dr. Holton and a response from Luc at 11:59 a.m.



Literally, one minute later, Luc apologized to Mariana:



After receiving Mariana's response, at 2:25 p.m., Luc then called her and reiterated the apology for his comments during the standup meeting.

### C.   The Alleged Protected Activity Occurred After the Decision to Eliminate the Position.

As previously discussed, GivePulse began discussing the elimination of Dr. Holton's position in late November 2021. Messages and documents clearly show that the CEO and CIO decided to eliminate Dr. Holton's position on the evening of December 2, 2021. The termination documentation and the meeting outline prepared in anticipation of the termination were created *before* the alleged protected activity.

As discussed above, Claimant was selected for termination before she engaged in an alleged protected activity. Luc could not have retaliated against Claimant for an alleged protected activity which had not yet occurred. That is, because the termination decision was made prior to Claimant's alleged protected activity, Claimant cannot establish pretext. *See Panizzi v. City of Chicago Bd. of Educ.*, No. 07 C 846, 2007 WL 4233755, at *8 (N.D. Ill. Nov. 19, 2007) ("Panizzi's pretext argument is severely weakened by her admission . . . that the non-renewal decision was made before Panizzi notified [the decisionmakers] that she was pregnant."). *See also Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1006 (7th Cir. 2001) (retaliation claim failed where "a review of the record does

8

not establish the inference that [the decisionmaker] knew about [the protected activity] before he selected her for the RIF.").

It is coincidental that the e-mail Dr. Holton sent to Luc regarding his comments at the standup meeting occurred right before she was terminated.  However, coincidental timing is not a substitute for causation.  *Salameh v. Sears Holding Management Corporation*, No. 08 C 4372, 2010 WL 183361, at * (N.D. Ill. Jan. 23, 2010) is instructive here. There, the plaintiff alleged that his former employer retaliated against him for requesting FMLA leave when it eliminated his position in a RIF.  Specifically, the day after plaintiff's manager told upper management that he had selected the plaintiff for layoff, the plaintiff requested FMLA leave. The plaintiff's FMLA was scheduled to begin the day after he was notified of his discharge. On considering Plaintiff's retaliation claim, the court noted that "there [wa]s no dispute that Sears made the decision to terminate Plaintiff several days before [his supervisor] had any knowledge of Plaintiff's leave request." *Id.* at *6. However, "when [the employer] implemented the decision, [management] knew that Plaintiff's leave was about to begin, thus creating a unique situation in which Sears made a non-discriminatory decision, but acquired knowledge of Plaintiff's protected activity before it was implemented." Id. The court dismissed the claim on summary judgment. Critically, the court opined:

> What Sears could or should have done as to the time it chose to implement the decision is not the issue. Courts cannot impose on employers their own ideas of what constitutes a prudent business decision; they merely assess whether an employer has engaged in conduct for a forbidden reason . . . Here, Plaintiff was selected for termination before his supervisor had any knowledge of his FMLA leave. And there is no other evidence that a reasonable juror could consider beyond the timing of Plaintiff's termination. If the Court were to allow Plaintiff's claim to go forward, despite the minimal evidence he's presented, such a ruling would penalize Sears for making a ministerial choice to implement a non-discriminatory decision that the company formulated before any protected activity took place. [Protection from retaliation] is a shield to prevent an employer from acting pursuant to a prohibited animus, it is not a sword with which employees can disrupt their employer's non-actionable decisions.

*Id.* at \*7. The material facts of the *Salameh* case are indistinguishable from those here. In both cases, the employer unequivocally decided to terminate the employee prior to the decisionmaker's knowledge of the employee's protected activity. Here, just as in *Salameh*, because the termination decision was made prior to the protected activity, Claimant's claim of retaliation cannot stand.

 D. <u>There is no evidence of retaliatory animus.</u>

  Additionally negating any inference of pretext, Claimant cannot present any evidence establishing that Luc possessed retaliatory animus in eliminating her position. Rather, the record evidence shows that Luc and McGirr eliminated the position because Claimant was not performing the responsibilities needed and a new hiring plan was necessary. While Claimant may disagree with GivePulse's assessment of her position and the decision to eliminate it, she cannot and has not offered any evidence establishing that Luc and McGirr's belief was anything other than genuine. *See Wilson v. Russell-Stanley Corp.*, 90 F. App'x 958, (7th Cir. 2004) ("[P]laintiff has failed to show that his employer's stated reasoning. . .was false or discriminatory. Accordingly, his circumstantial evidence fails to support a finding of pretext."). Accordingly, Claimant cannot meet her obligation of pointing to actual evidence undermining GivePulse's legitimate reason for terminating her employment, and her motion for summary judgment must fail.

 E. <u>Holton's reliance on the IDHR "Substantial Evidence Finding" is flawed.</u>

  Administrative agency determinations have limited evidentiary value. Although we are not at trial or currently in front of a jury where confusion and prejudice would be an issue, the "Substantial Evidence Finding" is nonetheless inappropriate for consideration under these circumstances. This is not a Human Rights Commission decision. This Court should afford no deference to IDHR's erroneous conclusions, since in these circumstances a "circuit court ... hears the claim de novo rather than by administrative review*." Vulpitta v. Walsh Const. Co.*, 2016 IL App

(1st) 152203, if 16 (citing 775 ILCS 5/8-11 l(A) (2012)), *appeal denied*, 77 N.E.3d 86 (Ill. 2017).[2]

    F.  <u>Holton's other arguments fare no better and Summary Judgment must be denied</u>.

<u>First</u>, Plaintiff's core argument is circular and fails to establish causation or retaliatory intent. In fact, for purposes of narrowing the issues, GivePulse predominantly agrees with the portion of Plaintiff's Brief at 6 titled "Plaintiff Engaged in Protected Activity and Suffered a Materially Adverse Action."  We can agree that:

- Luc engaged in inappropriate behavior when he commented that he would "go after" Mariana Prieto, if she wasn't in a relationship.

- Holton found the comment offensive.

- Prieto found the comment offensive.

- The e-mail Holton sent to Luc regarding the stand-up meeting was a protected activity.

- Luc admitted to his inappropriate comment and apologized to Prieto shortly afterwards.

- GivePulse was aware of the protected activity and Luc was the person who terminated Holton.

These points are made throughout Plaintiff's brief and they are largely not disputed.  However, Plaintiff makes no attempt to challenge GivePulse's evidence negating causation.  "Unless a statute (such as the Civil Rights Act of 1991) provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law."  *Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009).  Plaintiff chooses to ignore this evidence.  Holton had the opportunity to take the depositions of Luc and McGirr and declined to do so.  Instead, we are left with Plaintiff's self-serving affidavit and conclusory accusations – wholly insufficient to demonstrate causation, let alone a but-for relationship.

---

[2] The unreliability of an Agency determination is no better evinced than here where the IDHR made its determinations without considering Respondent's position statement.  Thus, the IDHR's findings of "substantial evidence" fail to evaluate GivePulse's defenses or evidence supported in opposition to the Charge.  *See* Declaration of Ethan G. Zelizer at 4-7.

<u>Second</u>, Holton's reliance on *Casna v. City of Loves Park* is misplaced (Pl. Br. at 8) 574 F.3d 420, 427 (7th Cir. 2009).  There, the short period of time (same day) presented a factual issue that ***precluded summary judgment*** by creating an issue of fact relating to the employer's legitimate reason for termination and the plaintiff's pretext argument. *Id.* ("A fact-finder must determine whether the Chief initiated Casna's discharge because she had just [that day] protested Elliot's possibly discriminatory attitude or because her work performance was inadequate.").

<u>Third</u>, Plaintiff's assertion that GivePulse did "not provide a clear reason for Plaintiff's termination" is nonsense (Pl. Br. at 9).  GivePulse gave exactly two reasons for why it terminated Holton: (1) position elimination; and (2) poor performance.  These are not inconsistent rationales that provide an inference of pretext.  Indeed, an employer can decide to eliminate a position and terminate an employment for poor performance.  Luc decided to terminate Valerie and eliminate her position (and the whole marketing team) before she engaged in a protected activity.



Moreover, despite Plaintiff's repeated assertions that she was "exceeding" GivePulse's expectations in the job, she failed to rebut any of the evidence presented by GivePulse establishing that there were, in fact, performance deficiencies.  Holton may attempt to argue that it was not "fair" for her to be terminated or that GivePulse did not give her enough time to dig herself out from the

"awful" situation she was in.  However, as stated by the Seventh Circuit:

> [I]t is not our role to determine the competency of or interfere in employment decisions simply where we believe an employer has made a poor choice. Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair. "We do not sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation."

*Ptasznik v. St. Joseph Hosp*., 464 F.3d 691, 697 (7th Cir. 2006) (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005)). In other words, an argument that GivePulse's expectations were too high or unfair is irrelevant; rather, the relevant issue is whether Holton was meeting GivePulse's expectations. She was not and she can offer no evidence to prove otherwise.

<u>Fourth</u>, Brian Halderman was not promoted into Holton's position after her termination as argued in Plaintiff's brief (Pl. Br. at 9).  Holton held the position of "Success & Research." Halderman was promoted to the new position of "Success and Outreach."  The positions were titled differently and matched the conversation had between McGirr and Luc in which Luc states that he didn't believe Holton would last for January and that he might "wipe out the whole marketing team."  That conversation between McGirr and Luc occurred on November 28, 2021.  The one-on-one meeting that Holton described as "awful" occurred on December 2, 2021.  Given the concerns that McGirr and Luc had regarding Holton's continued employment and Luc's belief that the marketing team may need to be rebuilt after the issues he identified, it is entirely reasonable to believe that the termination of Holton came with Luc's redesign of Holton's former position and the duties related thereto.

Fifth, Holton cannot Show that GivePulse's legitimate, non-discriminatory reasons were a pretext for retaliation.  Even if Holton could show a *prima facie* case, her claim fails because she cannot show that GivePulse's termination reasons were a pretext for retaliation.  Going beyond the outcome-determinative flawed timing issue in this case, the legitimate, non-retaliatory reasons for

the termination decision were completely unrelated to Plaintiff's alleged protected activity. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 463 n.4 (7th Cir. 1986) ("The most obvious legitimate reason for the discharge of an employee is that the employee's inadequate performance necessitated his termination."). In order to show pretext, Holton must show that GivePulse's stated reasons for the termination were "made up to cover up their discriminatory [or retaliatory] reasons." *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 646 (7th Cir. 2006). Pretext is "a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1175 (7th Cir. 2002) (citing *Russell v. Acme-Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995)). To show pretext, the plaintiff must demonstrate either that the proffered reason has no basis in fact or that it did not actually motivate the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000); *Fuka v. Thomson Consumer Elecs.,* 82 F.3d 1397, 1404 (7th Cir. 1996). As explained by the Seventh Circuit, "Courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi*, 336 F.3d at 532.

Moreover, as the Seventh Circuit explained in *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 506 (7th Cir. 2017): "Where multiple reasons are given, as in this case, the plaintiff faces a greater challenge. Showing that just one reason was a pretext may not be enough."(citing *Simpson v. Beaver Dam Cmty. Hosps., Inc.,* 780 F.3d 784, 798 (7th Cir. 2015); *Bodenstab v. County of Cook*, 569 F.3d 651, 659 (7th Cir. 2009); *Fischer v. Avanade, Inc.,* 519 F.3d 393, 403 (7th Cir. 2008)). Holton cannot show that one, much less all, of GivePulse's cited reasons for her termination are pretext for retaliation.

## <u>CONCLUSION</u>

For all of these dispositive reasons, Plaintiff's summary judgment motion should be denied. Moreover, given that more than a year ago, Plaintiff was presented with the lion's share of GivePulse's evidence negating her retaliation claim, Defendant requests its fees and costs for

14

opposing the motion for summary judgment.

DATED: July 24, 2024                                    Respectfully Submitted,

                                                       HR Law Counsel LLC

                                                       By: */s/ Ethan G. Zelizer*

                                                       Ethan G. Zelizer (ARDC# 6280096)
                                                       HR Law Counsel

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that on July 24, 2024, he electronically filed the foregoing with the Clerk of the Court of the Central District of Illinois via the CM/ECF system which will send notification of such filing to the attorneys of record.

HR Law Counsel LLC

By: <u>*/s/ Ethan G. Zelizer*</u>

Ethan G. Zelizer
HR Law Counsel