UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| VALERIE HOLTON, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>GIVEPULSE, INC., )<br>)<br>DEFENDANT. ) | No.: 2:23-cv-2057-CSB-EIL |

### DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant GivePulse, Inc., hereby responds to plaintiff's LR 56.1 Statement of Material Fact in support of her motion for summary judgment as to Count I of the complaint ("Retaliation") as follows:

DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. Plaintiff, Dr. Valerie Holton began working for GivePulse as the Director or Success and Research on July 6, 2021. (Exhibit 1, Declaration of Dr. Holton, ¶2; Exhibit 2, Dr. Holton Deposition., p. 18:10-11; 42:6).

RESPONSE: Admit.

2. Dr. Holton received an offer letter from Give Pulse on May 26, 2021. (Ex. 1, Dec. of Holton, ¶2; Ex. 3, Offer Letter). On May 30, 2021, Plaintiff signed an employment agreement outlining the terms of her employment with GivePulse. (Ex. 1, Dec. of Dr. Holton, ¶2, Ex. 4, Employment Agreement).

RESPONSE: Admit.

3. GivePulse is company who utilizes a software platform that helps connect universities and community partners for service opportunities (Ex. 2, Holton Dep., p. 26:7-9). George Luc, the CEO and co-founder of GivePulse, was Plaintiff's direct supervisor (Ex. 1, Dec. of Dr. Holton,

1

¶2; Ex. 2, Holton Dep., p. 19:15-17; 55:19).

RESPONSE: Admit.

4. Plaintiff met weekly or bi-weekly with Luc in one-on-one meetings which are documented within notes memorialized between the parties. (Ex. 1, Dec. of Dr. Holton, ¶4; Ex. 5, Notes from Meetings with Luc).

RESPONSE: Denied. Dr. Holton was not meeting GivePulse's expectations in her position. (Ex. B, Dec. of George Luc, ¶16). In September 2021, Luc took issue with a blog post that was written by a former employee who Holton managed. *Id.* at ¶29. Luc did not consider the blog post of high quality. *Id.* Luc further believed that the post was poking fun of the work GivePulse did and used fake examples of clients GivePulse did not have. *Id.* In response to Luc's concerns about the blog post and his request that Holton immediately revise it, Holton told Luc that she would not change it and that she and another coworker supported and "blessed" it. *Id.* at ¶30. On November 4, 2021, Luc sent Holton a Slack message in which he told her that he was not happy with her work and that he wanted her to immediately improve. *Id.* at ¶31. On Friday, November 26, 2021, at approximately 7:00 a.m., Luc sent an e-mail to Holton and others, expressing his concern and aggravation for an e-mail communication that went out to GivePulse's clients. *Id.* at ¶17. Holton was responsible for supervising the content and distribution of the communication. *Id.* at ¶17. In November 2021, Holton had a meeting with McGirr in which she requested that he give Holton a "heads up" if he believed Luc was going to fire her. *Id.* at ¶28. This came on the heels of Holton asking Luc to broaden her duties – which he summarily rejected as she wasn't performing her existing duties well. *Id.* Luc also expressed aggravation to Holton regarding her lack of supervision of an e-mail that incorporated competitor's website links and had various typos and tagging issues. *Id.* at ¶19. Luc kept a running document relating to his meetings with Holton. *Id.* at ¶20. A true and correct copy of that document is attached to Plaintiff's motion at Exhibit 5. This document (Ex. 5 to Plaintiff's Motion) mentions several instances where he took issue with Holton's performance. *Id.* at ¶21.

Holton knew she was not performing well before November 2021. *Id.* at ¶22. For example, on September 15, 2021, Luc expressed his concerns to Holton about her presentation of projects to Luc and McGirr. *Id.* at ¶23. Luc told Holton that he was aggravated with constantly receiving reports from Holton about her "successes" without measurable and objective metrics that he could track. *Id.* This became a running concern for Luc about Holton. Luc had conversations with Holton multiple times regarding her reports to him and Luc's inability to evaluate those reports due to Holton's lack of transparency in how she was working on and purportedly completing various projects. *Id.* at ¶24. On November 26, 2021, Luc wrote Holton and told her that he needed her to proofread posts and e-mails before they went out. *Id.* at ¶27. Luc then wrote "Valerie Holton, please schedule a meeting this coming week with me and the marketing team" to figure out how to "improve these efforts." *Id.* On December 2, 2021, Luc again told Holton of the discrepancies McGirr and Luc were finding in regards to purported accomplishments that Holton was reporting and the real-time technology tools that showed otherwise. *Id.* at ¶25. Holton later described that meeting as "awful" and rightfully so as Luc was critical of her work and suggested that she wasn't being honest and transparent with him. *Id.* at ¶26.

5. Plaintiff met all of her "OKR" (Objective and Key Results) indicators for her performance while at GivePulse (Ex. 1, Dec. of Dr. Holton, ¶4; Ex. 2, Holton Dep., p. 62:12-13; Ex. 5, Notes from Meetings with Luc).

RESPONSE: Denied. *See* response to No. 4 above.

6. Plaintiff was never disciplined during her employment with Give Pulse, nor was she advised she was not meeting the employer's expectations. (Ex. 1, Dec. of Dr. Holton, ¶3-4; Ex. 2, Holton Dep, p. 62:12-16).

RESPONSE: Admit that Holton was not disciplined; however, deny remainder. *See* response to No. 4 above.

7. Plaintiff was not given any performance evaluations at GivePulse, and never received any

3

communications either verbally or in writing expressing any concern or issue with her performance (Ex. 1, Dec. of Dr. Holton, ¶3-4; Ex. 2, Holton Dep., p. 62:15-18).

RESPONSE: Admit that Holton was not given a performance evaluation; however, deny remainder. *See* response to No. 4 above.

8. Mariana Prieto was Plaintiff's direct report and co-worker. (Ex. 2, Holton Dep., p. 60:1-2). Mariana had previously indicated to Plaintiff that Luc had behaved inappropriately towards her on previous occasions prior to Plaintiff being terminated. (Ex. 1, Dec. of Dr. Holton, ¶6).

RESPONSE: Admit first sentence; however, deny remainder.

9. On Friday, December 3, 2021, at approximately 10:15 a.m., GivePulse employees, including Luc, Mariana, and Plaintiff, participated in a group discussion (referred to as a "Standup" meeting) online. (Ex. 1, Dec. of Dr. Holton, ¶5-6; Ex. 2, Holton Dep, 58:11-12; 59:7).

RESPONSE: Admit.

10. During the December 3, 2021, standup meeting, Luc loudly stated, "If Mariana [Prieto] didn't have [her boyfriend], I would go after her." (Ex. 1, Dec. of Dr. Holton, ¶7; Ex. 2, Holton Dep, 58:13-16; Ex. 6, Def. Resp. to Plaintiff's Request to Admit, Admission #1). Mariana Prieto was offended by Luc's comment in the meeting and provided Plaintiff with an email about what had occurred. (Ex. 7, Email to Plaintiff from Prieto).

RESPONSE: Admit.

11. Shortly after the standup meeting, at 10:47 a.m. on December 3, Plaintiff sent an email to Luc stating that his comment to Mariana was inappropriate and that he should apologize. (Ex. 1, Dec. of Dr. Holton, ¶9; Ex. 6, Def. Resp. to Pl. Req. to Admit, Admission #2; Ex. 8, Plaintiff's Email to Luc on December 3, 2021).

RESPONSE: Admit.

12. At 11:00 a.m., Luc messaged Mariana in a separate Slack channel and apologized to Mariana,

stating that his statement was inappropriate. Mariana responded that Luc's statement had made her uncomfortable. (Ex. 1, Dec. of Dr. Holton, ¶10; Ex. 9, Slack Message from Luc to Prieto).

RESPONSE: Admit.

13. In the early afternoon on December 3, 2021, Luc advised Plaintiff via phone that her employment was terminated, effective immediately, and her position was being eliminated. (Ex. 1, Dec. of Dr. Holton, ¶11; Ex. 6, Def. Resp. to Pl. Req. to Admit, Admission #4).

RESPONSE: Admit.

14. Less than 3 hours had elapsed between when Plaintiff emailed George Luc informing him that his comment was inappropriate and the termination of Plaintiff's employment. (Ex. 1, Dec. of Dr. Holton, ¶11; Ex. 6, Def. Resp. to Pl. Req. to Admit, Admission #4).

RESPONSE: Admit.

15. Approximately an hour after terminating the Plaintiff, Luc sent Dr. Holten an email confirming the fact she had been terminated and had attached a separation agreement on December 3, 2021. (Ex. 1, Dec. of Dr. Holton, ¶12; Ex. 6, Def. Resp. to Pl. Req. to Admit, Admission #3; Ex.10, December 3, 2021, Email from Luc to Plaintiff; Ex. 11, Separation Agreement). Both the email and the separation agreement stated that Plaintiff had 24 hours in which to sign the document. (Ex.10, December 3, 2021, Email from Luc to Plaintiff; Ex. 11, Separation Agreement).

RESPONSE: Admit. Further add that Plaintiff did not request additional time to review the agreement. (Ex. 1, Holton Dep. Tr. at p. 106, 7-21).

16. The following day, on December 4, 2021, Luc promoted Brian Halderman to Plaintiff's previous position with Give Pulse. (Ex. 12, Email from Luc to Give Pulse Staff). The position of Director of Success and Outreach was identical to the position that Plaintiff previously held with GivePulse. Brian also took over supervisory responsibilities for Mariana. (Ex. 12).

RESPONSE: Deny. Brian Halderman was not promoted into Holton's position after her termination. (Ex. B, Dec. of George Luc, ¶32). Holton held the position of "Success & Research." *Id.* at 33.

5

Halderman was promoted to the new position of "Success and Outreach." *Id.* The positions were titled differently and matched the November 28, 2021, conversation had between Luc and McGirr in which Luc stated that he didn't believe Holton would last to January and that GivePulse might "wipe out the whole marketing team." *Id.* at 34. The one-on-one meeting that Holton described as "awful" occurred on December 2, 2021 and was partly about Holton's desire to broaden her duties. The then-organization of the company and the titles employees held were top of mind when Liuc fired Holton and that contributed to his redesign of the position from "Success and Research" to "Success and Outreach." *Id.* at 35.

17. Plaintiff believed that her termination was directly related to her engaging in protected activity earlier in the day on December 3, 2021 (Ex. 1, Dec. of Dr. Holton, ¶13).

RESPONSE: Deny. Plaintiff was aware of her deficiencies leading to her termination and had previously asked McGirr just a week earlier to give her a "heads up" if he thought Luc was going to terminate her. *See* response to No. 4 above; *see also* (Ex. B, Dec. of George Luc, ¶28). On March 11, 2022, Plaintiff filed a Charge of Discrimination (Charge No.: 2022SF1005) with the Illinois Department of Human Rights ("IDHR") (Ex. 13, Charge of Discrimination).

RESPONSE: Admit.

18. On January 6, 2023, the IDHR issued a *Notice of Substantial Evidence*, noting that there was substantive evidence of retaliation of Plaintiff as a result of her protected activity. (Ex. 14, Notice of Substantial Evidence). The Department noted that while Give Pulse alleged they had terminated Plaintiff for poor performance (as opposed to Plaintiff's position being eliminated, which they had previously alleged), Defendant did not provide any information relating to a) Plaintiff's performance; b) Plaintiff's discharge; c) Defendant's applicable policies; and d) documentation of similarly situated employees who were discharged under similar circumstances. (Ex. 14, Notice of Substantial Evidence, p. 7).

RESPONSE:  Deny.  On September 22, 2022, in response to that Charge, GivePulse submitted a position statement and related evidence negating Plaintiff's claim of retaliation.  (Declaration of Ethan Zelizer at ¶4).  The IDHR declined to consider that evidence, stating that the submission was untimely.  *Id.* at ¶5.  The IDHR issued its "Substantial Evidence" finding on November 7, 2022, stating that "[g]iven the sufficiently short timeframe between her alleged protected activity and her discharge, this count is recommended to be heard by a trier of fact."  Plaintiff's Ex. 14.  A true and correct copy of GivePulse's position statement to the IDHR is attached to Zelizer's Dec. as Exhibit A.

## DEFENDANT'S ADDITIONAL STATEMENT OF MATERIAL FACTS

1. Plaintiff had the opportunity to take depositions of my client and its executives but declined to do so. (Zelizer Dec. at ¶8).  The only deposition taken in this case was my deposition of Plaintiff.  *Id.*

2. Luc began discussing the elimination of Dr. Holton's position with my co-founder, James McGirr, in late November 2021.  (Luc Dec. at ¶3).

3. The decision to terminate Dr. Holton was made on December 2, 2021, after James and Luc spoke that evening.  (Luc Dec. at ¶4).

4. Luc prepared the termination documentation in the early morning hours of December 3, 2021, well before Dr. Holton's alleged protected activity later that day.  (Luc Dec. at ¶5).

5. The screenshot below is a true and accurate copy of the text exchange that I had with James McGirr on November 28, 2021.



(Luc Dec. at ¶6).

      6.      The screenshots below are true and accurate copies of the text exchanges that I had with James McGirr on November 16, 2021, December 2, 2021, and December 4, 2021.



(Luc Dec. at ¶7).

      7.      In the early morning, before Holton's alleged protected activity, I prepared a termination memo for me to work off of during Holton's termination. Below, you will find a true and

8

correct copy of the document history of the termination memo, establishing the creation date and time stamps:



(Luc Dec. at ¶8).

8. In addition, I prepared an outline to follow for my conversation with Holton *before* the alleged protected activity occurred. A true and correct copy of that outline is shown below.

**Dec 3rd, 2:30pm CT:**

George (I read this out):
It was great to connect with you and Brian on what you believe your role should evolve into from a People Operations standpoint a few weeks back, what a reorg would look like and determining what's best for the business..

James and I thought about it for the past weeks. And we believe what's best for the business, especially at this stage of our trajectory and what we want to accomplish in the next year, we will be eliminating your position and will not be hiring for the Director of Success and Research position.

With that said, we think it's in the best interest to the business that we end your employment effective today. Note: You've only been with us for a few months but I want to ensure a smooth transition for your next career, we will cover your salary and unused vacation which will total to around 6700 as a severance package plus sustaining your health benefits until the end of this year

In addition, you should keep the standing desk and chair. For the laptop, you can decide if you want to purchase it from us for 1000 or we can have you ship it back to us.

After this call, you'll get an email listing out the details and an agreement for you to sign so we can pay you the severance package. I will inform the team at the end of the day.

Lastly,
I really appreciate your friendship, all of your accomplishments and the work you have done to help GivePulse thus far. I wish you the best of luck.

And I'll end it right here. We'll start deactivating your accounts. Do you have any questions?

(Luc Dec. at ¶9).

9.  Luc holds daily meetings where the staff talk about the activities of the day. On Fridays or holidays, the meeting organizers have the opportunity to include a question for everyone. On Dec 3rd, 2021 (a Friday), the request was to provide a compliment or fun memory of Mariana (who at that time had worked for GivePulse for 2 years).  (Luc Dec. at ¶10).

10. Luc admits that he made the following inappropriate comment when attempting to compliment Mariana Prieto:

> James and I appreciate Mariana who always works so hard for us and even helps celebrate the holidays. Back in the day, Nabil, Erica and I and Mariana worked really hard late in the evening to find a solution for a client at 1130pm and into the late nite and appreciate her. Mariana, if you didn't have Sean I'd go after you! I know this is HR! We hope you work here for life and we'll do everything we can to keep you here.

(Luc Dec. at ¶11).

This comment was made at approximately 11:30 a.m. The meeting ended shortly thereafter. (Luc Dec. at ¶12).

11. The alleged protected activity occurred at 11:47 a.m. with an e-mail from Dr. Holton and a response from me at 11:59 a.m. A true and correct copy of that e-mail exchange is provided below:



(Luc Dec. at ¶13).

12. Literally, one minute later, Luc apologized to Mariana. A true and accurate copy of Luc's written apology is provided below.

11



(Luc Dec. at ¶13).

13.     After receiving Mariana's response, at 2:25 p.m., Luc then called her and reiterated the apology.   (Luc Dec. at ¶13).

DATED: July 24, 2024                                        Respectfully Submitted,

                                                            HR Law Counsel LLC

                                                            By: */s/ Ethan G. Zelizer*
                                                            Ethan G. Zelizer (ARDC# 6280096)
                                                            HR Law Counsel
                                                            29 South Webster Street, Suite 350C
                                                            Naperville, Illinois 6054
                                                            *Attorney for GivePulse, Inc.*

## CERTIFICATE OF SERVICE

    The undersigned attorney of record hereby certifies that on July 24, 2024, he electronically filed the foregoing with the Clerk of the Court of the Central District of Illinois via the CM/ECF system which will send notification of such filing to the attorneys of record.

        HR Law Counsel LLC

        By: */s/ Ethan G. Zelizer*

        Ethan G. Zelizer
        HR Law Counsel