E-FILED
Monday, 23 December, 2024  04:31:35 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |  |
|---|---|---|
| **VALERIE HOLTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 23-CV-2057** |
| | ) | |
| **GIVEPULSE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Plaintiff, Valerie Holton, filed a Complaint on February 22, 2023, in the Circuit Court of Champaign County, Illinois, against Defendant, GivePulse, Inc., alleging retaliation for opposing unlawful discrimination, in violation of the Illinois Human Rights Act ("IHRA") (775 Ill. Comp. Stat. 5/2-101, et seq.), and violations of the Illinois Workforce Transparency Act (820 Ill. Comp. Stat. 96/1-1, et seq.).  The case was removed to this court on March 15, 2023, on diversity jurisdiction grounds, pursuant to 28 U.S.C. § 1332(a).[1]  Plaintiff filed a Partial Motion for Summary Judgment (#23) on July 1, 2024.  Defendant filed a Response (#26) on July 24, 2024, to which Plaintiff filed a Reply (#28) on August 7, 2024.  For the following reasons, Plaintiff's Motion is DENIED.

---

[1]Plaintiff is a citizen of Illinois and Defendant is a citizen of Texas.  The amount in controversy exceeds $75,000.

BACKGROUND

The background is taken from Plaintiff's Statement of Undisputed Material Facts, Defendant's Statement of Material Facts (#27), and the exhibits attached by the parties to their briefs.

Plaintiff's Hiring and Position

Defendant is a company that utilizes a software platform that helps connect universities and community partners for service opportunities.  Plaintiff began working for Defendant as the "Director of Success and Research" on July 6, 2021.  She received an offer letter from Defendant on May 26, 2021, and thereafter signed an employment agreement outlining the terms of her employment with Defendant.

George Luc, the chief executive officer and co-founder of Defendant along with James McGirr, was Plaintiff's direct supervisor.  Plaintiff met weekly or bi-weekly with Luc in one-on-one meetings, which are documented within notes memorialized between the parties.

Plaintiff's Job Performance

Plaintiff states that she met all of her "objective and key result" indicators for her performance while working at Defendant.  Plaintiff was never disciplined during her employment with Defendant.  Plaintiff was never given any performance evaluations while working at Defendant.  Plaintiff states that she was never advised that she was not meeting Defendant's expectations and that she never received any communications, either orally or in writing, expressing any concern or issue with her performance.

However, in his declaration (#26-3) Luc states that Plaintiff was not meeting Defendant's expectations. Luc states that he kept a constantly updated document relating to his meetings with Plaintiff, which mentions several instances where he took issue with Plaintiff's performance, and that Plaintiff knew that she was not performing well by November 2021. For example, Luc states, on September 15, 2021, he expressed his concerns to Plaintiff about her presentation of projects to himself and Defendant co-founder McGirr. Luc told Plaintiff that he was aggravated with constantly receiving reports from her about her "successes" without measurable and objective metrics that he could track. This became a running concern for Luc about Plaintiff, and he had multiple conversations with her regarding her reports to him and his inability to evaluate them due to her lack of transparency in how she was working on and purportedly completing various projects.

Luc states that in September 2021, he took issue with a blog post written by a former employee who Plaintiff managed. Luc did not consider the blog post to be of high quality, and further believed the post was making fun of the work Defendant did and used fake examples of clients Defendant did not have. In response to Luc's concerns about the blog post and his request that Plaintiff immediately revise it, Plaintiff told Luc that she would not change it and that she and another coworker supported and "blessed" it.

Luc states that on November 4, 2021, he sent Plaintiff a Slack message in which he told her that he was not happy with her work and that he wanted her to immediately improve.

Luc states that Plaintiff had a meeting with McGirr in November 2021, wherein she requested he give her a heads up if he believed Luc was going to fire her. Luc states Plaintiff's request came on the heels of a meeting where she asked Luc to broaden her duties, but Luc objected to the request because she was not performing her existing duties well.

On November 26, 2021, at approximately 7:00 am, Luc sent an email to Plaintiff and others, expressing his concern and aggravation over an email communication that went out to Defendant's clients. Plaintiff was responsible for supervising the content and distribution of the communication. Luc expressed his aggravation to Plaintiff regarding her lack of supervision of an email that incorporated competitors' website links and had various typos and tagging issues. He wanted her to proofread posts and emails before they went out, and asked her to schedule a meeting with him and the marketing team to figure out how to improve these efforts.

On December 2, 2021, Luc told Plaintiff of the discrepancies he and McGirr were finding in regard to the purported accomplishments Plaintiff was reporting and the real-time technology tolls that showed otherwise. Luc states that Plaintiff later described that meeting as "awful," to which Luc replies "and rightfully so as I was critical of her work and suggested that she wasn't being honest or transparent with me."

<u>Plaintiff's Protected Activity</u>

Mariana Prieto was Plaintiff's direct report and co-worker. Prieto had previously indicated to Plaintiff that Luc had behaved inappropriately towards her on several occasions prior to Plaintiff being terminated.

4

On December 3, 2021, at approximately 10:15 am, Defendant employees, including Luc, Prieto, and Plaintiff, participated in a group discussion (referred to as a "Startup" meeting) online.  During the meeting, Luc loudly stated "[i]f Mariana didn't have [her boyfriend], I would go after her."  Prieto was offended by Luc's comment in the meeting and sent Plaintiff an email about what had occurred.

Shortly after the Startup meeting, at around 10:47 am on December 3, Plaintiff sent an email to Luc stating that his comment to Prieto was inappropriate and that he should apologize.  At 11:00 am, Luc messaged Prieto in a separate Slack channel and apologized to her, stating that his statement was inappropriate.  Prieto responded that Luc's statement made her uncomfortable, and she appreciated his apology.

<u>Plaintiff's Termination</u>

Luc, in his declaration, states that he began discussing the elimination of Plaintiff's position with McGirr in late November 2021.  Luc further states that the decision to terminate Plaintiff was made on December 2, 2021, after he and McGirr spoke that evening.  Luc states that he prepared the termination documents in the early morning hours of December 3, 2021, "well before [Plaintiff's] alleged protected activity later that day."[2]

---

[2]Defendant attached a screenshot of this memorandum containing a "version history" indicating it had been worked on between 7:54 am and 8:08 am on December 3, thus predating the incident with Prieto and Plaintiff's claimed protected activity.

To that end, Defendant attached screenshots of text messages between Luc and McGirr.[3]  One, dated November 28, 2021, has Luc stating "and I thought about it … I don't think [Plaintiff] will last for Jan.  Going to hire a real marketing person to oversee it, so we might have to wipe out our whole marketing team.  Will see.  We can chat about it tomorrow or tonight."  Another screenshot from December 2, 2021, has Luc asking McGirr if he has "a few min to chat about [Plaintiff]?"

In the early afternoon of December 3, 2021, Luc advised Plaintiff via telephone that her employment was terminated, effective immediately, and her position was being eliminated.  Less than three hours had elapsed between the time when Plaintiff emailed Luc informing him that his comment about Prieto was inappropriate and the termination of Plaintiff's employment.

Approximately one hour after terminating Plaintiff's employment, Luc sent her an email confirming the fact that she had been terminated.  Attached to the email was a separation agreement.  Both the email and the separation agreement stated that Plaintiff had 24 hours in which to sign the document.  Plaintiff, however, did not request more time to review the agreement.

---

[3]Plaintiff objects to Defendant's citation to and utilization of screenshots depicting text messages between Luc and McGirr as "unauthenticated, irrelevant, and inadmissible."  However, Luc's declaration stating that he sent the messages is sufficient to support that those messages are what they are claimed to be, and have been authenticated through Luc's declaration.  See *Peak v. Laborers Union Local No. 1*, 2024 WL 216698, at *4 (N.D. Ill. Jan. 19, 2024).  In any event, as with the screenshot of Luc's working draft of Plaintiff's termination documents from the morning of December 3, 2021, the court's analysis does not ultimately depend upon those screenshots.  The court relies on the statements made by Luc in his sworn declaration (#26-3), just as the court relies on the statements made by Plaintiff in her own sworn declaration (#23-1) and deposition (#23-2), as the court is permitted to do.  Plaintiff may reraise any challenge she has to the admissibility of the screenshots at trial in the form of a motion in limine.

On December 4, 2021, Luc promoted Brian Halderman as Defendant's "Director of Success and Outreach."  Plaintiff claims that the position of Director of Success and Outreach was identical to the position that Plaintiff previously held with Defendant (Director of Success and Research).  Halderman also took over supervisory responsibilities for Prieto.

Luc, on the other hand, declares that Halderman was promoted to a "new" position.  He states the positions were titled differently and matched a November 28, 2021, conversation between himself and McGirr, in which he stated that he did not believe Plaintiff would last until January 2022 and that they might "wipe out the whole marketing team."  Luc further states that the December 2, 2021, meeting that Plaintiff described as "awful" was partly about Plaintiff's desire to broaden her duties.  Luc states that the then-organization of the company and the titles employees held were top of mind when he fired Plaintiff and that this contributed to his redesign of the position from "Success and Research" to "Success and Outreach."

Illinois Department of Human Rights

Plaintiff believed that her termination on December 3, 2021, was directly related to her engaging in protected activity earlier that same day.  On March 11, 2022, she filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR").  On January 6, 2023, the IDHR issued a Notice of Substantial Evidence, noting that there was substantial evidence of retaliation against Plaintiff as a result of her protected activity.  The IDHR further noted that, while Defendant alleged Plaintiff had been terminated for poor performance (as opposed to her position being eliminated, which Defendant had previously alleged), Defendant did not provide any information relating to: (1)

7

Plaintiff's performance; (2) Plaintiff's discharge; (3) Defendant's applicable policies; and (4) documentation of similarly situated employees who were discharged under similar circumstances.

Defendant states that on September 22, 2022, in response to the IDHR charge, it submitted a position statement and related evidence challenging Plaintiff's claim of retaliation, but that the IDHR declined to consider that evidence because the submission was untimely.

ANALYSIS

Plaintiff moves for summary judgment in her favor only on Count I of her Complaint, that Defendant retaliated against her for opposing unlawful discrimination in violation of the IHRA. In support of her argument, Plaintiff contends that "there is an abundance of evidence showing that Plaintiff was terminated in retaliation for her protected activity[,]" including suspicious timing and pretext on the part of Defendant in justifying her termination. Defendant responds that suspicious timing is all Plaintiff has to support her claim, and that she was terminated for poor performance and because Defendant intended to eliminate the position, all of which predated her alleged protected activity.

*Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute

8

of fact that requires a trial." *Waldridge*, 24 F.3d at 920. In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See *Singer*, 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F.Supp.2d 815, 835 (C.D. Ill. 2010) (emphasis in original).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge*, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), citing *Celotex Corp.*, 477 U.S. at 322-23.

*Retaliation*

Plaintiff's claim in Count I is brought under the IHRA and premised on an adverse action taken against her in retaliation for her engagement in a protected activity: opposing or reporting sexual harassment/gender discrimination.  Such a claim could also be brought under federal law pursuant to Title VII of the Civil Rights Act of 1964, which "prohibits various 'unlawful employment practices' involving discrimination on the basis of 'race, color, religion, sex or national origin[,]'"as well as "discriminating against an employee 'because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Volling v. Kurtz Paramedic Services, Inc.*, 840 F.3d 378, 382 (7th Cir. 2016), quoting 42 U.S.C. §§ 2000e-2, 2000e-3(a) (cleaned up).  Retaliation is a cognizable claim under the IHRA, and Illinois courts apply the federal Title VII framework to IHRA claims.  *Volling*, 840 F.3d at 382-83.  Therefore, this court will apply the Title VII framework in analyzing Plaintiff's IHRA retaliation claim.  See *Vavra v. Honeywell International, Inc.*, 688 F.Supp.3d 758, 769 (N.D. Ill. 2023).

"Title VII's anti-retaliation provision provides that it is unlawful for an employer to discriminate against its employee because the employee filed a complaint or participated in an investigation of an unlawful employment practice." *Robertson v. Department of Health Services*, 949 F.3d 371, 378 (7th Cir. 2020), citing 42 U.S.C. § 2000e-3(a).  "This provision 'seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms ... by prohibiting employer actions that are

likely to deter victims of discrimination from complaining to the EEOC, the courts, and employers.'" *Robertson*, 949 F.3d at 378, quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (cleaned up).

"To succeed on a Title VII retaliation claim, a plaintiff must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the employer took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Robertson*, 949 F.3d at 378 (cleaned up). In determining a Title VII retaliation claim, the court must consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation. See *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017).

"When the plaintiff establishes a prima facie case of retaliation, an employer may produce evidence which, if taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for taking the adverse employment action." *Robertson*, 949 F.3d at 378. "If the employer meets this burden, the plaintiff, to avoid summary judgment, then must produce evidence that would permit a trier of fact to establish, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination." *Robertson*, 949 F.3d at 378. In determining whether the employer's reason can be characterized as pretextual, the court does not evaluate whether the employer's proffered justification was accurate or even whether it was unfair, but rather the sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief. *Robertson*, 949 F.3d at 378.

11

<u>Elements 1 and 2: Protected Activity and Materially Adverse Action</u>

The court finds that there is no genuine issue of material fact as to whether Plaintiff has proven the first two elements of her retaliation claim. Indeed, Defendant, in its Response brief, makes no argument concerning these elements. First, reporting sexual harassment or discrimination is a recognized protected activity under Title VII. See *Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023). Second, termination of employment is undoubtedly an adverse employment action. *Bagwe v. Sedgwick Claims Management Services, Inc.*, 811 F.3d 866, 889 (7th Cir. 2016). Thus, Plaintiff has satisfied the first two elements of her prima facie case.

<u>Element 3: Causation</u>

This leaves the third element in a retaliation claim, causation. Again, in a retaliation claim, "Title VII demands 'but-for causation' between the protected activity and the retaliation." *Xiong v. Board of Regents of University of Wisconsin System*, 62 F.4th 350, 355 (7th Cir. 2023). "But that standard, as case law explains, 'does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity.'" *Xiong*, 62 F.4th at 355, quoting *Lesiv v. Illinois Central R.R. Co.*, 39 F.4th 903, 918 (7th Cir. 2022).

To show that retaliation was the "but-for" reason for her termination, a plaintiff can use either direct or circumstantial evidence. *Rowlands v. United Parcel Service – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). For example, an admission that Defendant fired Plaintiff in retaliation for her complaint to Luc about his behavior toward Prieto would be direct evidence, although such evidence is, of course, rare. See *Rowlands*, 901 F.3d at 802. This is not one of those rare cases, as Plaintiff does not have direct evidence

establishing retaliation.  Plaintiff must therefore rely on circumstantial evidence like suspicious timing, ambiguous statements, treatment of similarly situated employees, and any other relevant information that could permit an inference of retaliation.  See *Robertson*, 949 F.3d at 379.  Still, the "dispositive question is whether a reasonable fact-finder could find a but-for causal link between the protected activities and adverse actions at issue."  *Robertson*, 949 F.3d at 379 (cleaned up).

The court finds that Plaintiff has made a prima facie case via circumstantial evidence in the form of suspicious timing.  It is true that the Seventh Circuit has held that suspicious timing alone is rarely enough to create a triable issue, and thus for an "inference of causation to be drawn solely on the basis of a suspicious-timing argument, [the Seventh Circuit] typically allow[s] no more than a few days to elapse between the protected activity and the adverse action."  *Igasaki v. Illinois Department of Professional and Financial Regulation*, 988 F.3d 948, 959 (7th Cir. 2021).

This, however, is that rare case in which suspicious timing alone could raise an inference of causation.  Indeed, this is the shortest time interval between the protected activity and adverse action that this court has ever seen.  Even Defendant, at page 2 of its Response, admits that "[t]here is no doubt that the facts here have provided the parties and the court with one of the shortest gaps in time between the alleged protected activity and the adverse employment action."  In an extreme case such as this one, where the adverse impact comes "on the heels" (in this case, a few hours) of the protected activity, suspicious timing alone is enough to raise an inference of causation.

See *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (finding triable issue of material fact as to causation where adverse action came one day after protected activity).  Plaintiff has made her prima facie case.

<u>Defendant's Legitimate Reason and Pretext</u>

While Plaintiff has presented circumstantial evidence establishing a causal connection between her protected activity and termination, Defendant has presented non-retaliatory reasons for the adverse action: Plaintiff's performance was deficient and Defendant was eliminating her position to replace it with a different position.

First, Luc, in his declaration, stated that Plaintiff was not meeting Defendant's expectations, in that he had problems with Plaintiff's presentation of projects to himself and McGirr; that he was aggravated about Plaintiff's constant reporting of her "successes" without measurable and objective metrics that he could track; the low quality blog post made by Plaintiff that she refused to change despite Luc's concerns and his request that she immediately change it; Luc's November 4, 2021, message to Plaintiff that he was not happy with her work and wanted immediate improvement; Luc's November 26, 2021, email to Plaintiff requesting she proofread posts and emails before they went out and asking her to meet with him to figure out how to improve her efforts; and the December 2, 2021, "awful" meeting where Luc was critical of her work and suggested she was not being honest or transparent with him.  "Inconsistent performance—though not uniformly bad—is a legitimate, non-retaliatory reason for termination." *Castro v. DeVry University, Inc.*, 786 F.3d 559, 580 (7th Cir. 2016); see also

*Roberts v. Separators, Inc.*, 172 F.3d 448, 451-52 (7th Cir. 1999) ("poor performance" was legitimate, nondiscriminatory reason where plaintiff's "performance declined after an initial period of excellence").

Second, Luc stated in his declaration that he began discussing the elimination of Plaintiff's position with McGirr in late November 2021, and Luc told McGirr that he did not believe Plaintiff would last until January 2022 and that the entire marketing team may have to be "wipe[d] out." The elimination of a position can be a legitimate, non-discriminatory reason for an adverse action, provided that the elimination is due to non-retaliatroy reasons such as budget issues. See *Chatman v. Board of Education of City of Chicago*, 5 F.4th 738, 749 (7th Cir. 2021). Here, the elimination of Plaintiff's position, per the representations of Luc, tied in to Plaintiff's deficient performance in her job.

Because Defendant has presented non-retaliatory reasons for the adverse action, "the controlling question at the bottom this case is 'whether the proffered reasons were pretext for retaliation.'" *Robertson*, 949 F.3d at 380, quoting *Burton v. Board of Regents of the University of Wisconsin System*, 851 F.3d 690, 697 (7th Cir. 2017). Plaintiff must demonstrate that Defendant's proffered reason for her termination was not honestly believed, and to meet this burden Plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [Defendant's] stated reason that would permit a reasonable person to conclude that the stated reason was unworthy of credence." See *Robertson*, 949 F.3d at 380 (cleaned up).

Plaintiff first points to "the haste" with which the separation agreement was drawn up and provided to Plaintiff at her termination, along with the pressure imposed upon her to sign the agreement within 24 hours. Plaintiff argues that the short window

of time that Defendant gave her to review the agreement and the fact that Defendant did not advise her of her option to have it reviewed by an attorney is evidence that Defendant intended to shield itself from potential future liability in litigation.  Plaintiff further notes that the agreement violated various provisions of the Illinois Workforce Transparency Act.

Plaintiff's argument to this effect may demonstrate that Defendant was not engaging in best business practices, and was possibly in violation of Illinois law with regard to the Workforce Transparency Act.[4]  However, it does not so undercut Defendant's purported explanation that there is no genuine issue of material fact as to whether Defendant honestly believed Plaintiff should be terminated due to poor performance, which Plaintiff must show as the party moving for summary judgment. Luc stated in his declaration that he drew up the agreement in the hours *before* the incident with Prieto.  Further, as noted by Defendant, Plaintiff did not request extra time to review the separation agreement or to speak to an attorney before signing. Taking all reasonable inferences in favor of Defendant, as the court must do on summary judgment, it is just as reasonable to infer that Defendant's separation

---

[4]The specific provisions in the separation agreement (#23-11) that Plaintiff takes issue with as violative of the Illinois Workforce Transparency Act, at page 10 of her Motion, include: (1) not stating the right to have an attorney review the agreement prior to its execution; (2) no reference to bargained-for consideration in exchange for Plaintiff's confidentiality; (3) requiring Plaintiff to waive any claims of unlawful employment practices that accrue after the date of agreement's execution; and (4) broad release and waiver of claims ranging from wage disputes to tort to public policy violations and constructive discharge.  The court would note that the agreement does contain a provision stating Plaintiff does not waive her rights or claims that may arise after the date she signs the agreement.

agreement was sloppily prepared or crafted to give Defendant an advantage in general upon separation of employment, as opposed to being specifically intended silence Plaintiff with respect to a retaliation claim.

Plaintiff also points to the conflicting reasons given by Defendant for her termination, noting that, in Plaintiff's termination letter, Defendant said it was eliminating her position, whereas in its Answer to Plaintiff's Complaint, Defendant claimed that Plaintiff was not performing her job duties to its standards. Plaintiff also argues that her position was not eliminated, as it was given to Halderman.

To be sure, if an employer's explanation for the challenged employment decision has been shifting or inconsistent, this may be evidence of pretext. *Adebiyi v. South Suburban College*, 98 F.4th 886, 893 (7th Cir. 2024). Still, where multiple reasons for an adverse action are given, the plaintiff faces a greater challenge, as "[s]howing that just one reason was a pretext may not be enough." *Tibbs v. Administrative Office of the Illinois Courts*, 860 F.3d 502, 506 (7th Cir. 2020).

Defendant's shifting, or differing, explanations for Plaintiff's termination, along with only having 24 hours to sign the separation agreement, is another piece of evidence in support of her contention that Defendant did not honestly believe the reasons it provided. However, taking that same evidence in the light most favorable to Defendant and drawing all reasonable inferences in Defendant's favor, the two reasons are not entirely conflicting, and may even be supporting, or at least complementary. Based on Luc's declaration, Plaintiff's poor performance in her position revealed that the type of work she was performing was not exactly what Luc and McGirr were looking for, and that the position should be more focused on "Outreach" than

17

"Research."  Plaintiff, in Luc's mind, seemed to struggle with the public-facing aspect of her job, as evidenced by Luc's frustration with the performance of the marketing team and Plaintiff's public blog posts and emails.  In other words, Plaintiff's poor performance informed and provided further impetus to Luc and McGirr's decision to eliminate her position.

Finally, Plaintiff argues that "Defendant has provided absolutely no evidence of any discussion with Plaintiff (or amongst themselves) about Plaintiff not meeting expectations[,]" as there were no performance evaluations, no reprimands, no letters of expectation, or any other documentation that Plaintiff was not meeting Defendant's expectations.  Defendant, however, has provided such evidence in the form of Luc's declaration, wherein he gives specific examples of problems he had with Plaintiff's performance, his growing concerns about her ability to do the job for which she was hired, his discussions with McGirr on whether Plaintiff would make it to January and whether to fire the entire marketing team, the "awful" December 2, 2021, meeting, and the reasons behind her termination and the new position (or promotion) for Halderman.  Luc also states that Plaintiff had a meeting with McGirr in November 2021, wherein she requested he give her a heads up if he believed Luc was going to fire her, leading to a reasonable inference that Plaintiff was aware Defendant was not happy with her work performance.

Plaintiff points to the absence of official documentation evincing that Defendant considered her performance to be poor, but such evidence, when weighed against Luc's declaration, goes more to credibility and weight, rather than demonstrating that *no* genuine issue of material fact exists on this point.  It also does not conclusively show

that she was meeting Defendant's expectations.  Thus, while Plaintiff might have considered herself to be good at her job, inconsistent performance—though not uniformly bad—is a legitimate, non-retaliatory reason for termination.  See *Cosmano v. Lottery*, 2021 WL 5050283, at *5 (N.D. Ill. Nov. 1, 2021), citing *Castro*, 786 F.3d at 580.

Plaintiff also argues that Luc's declaration that Plaintiff was not meeting expectations "should carry no evidentiary weight."  But Plaintiff provides no legal support for this contention.  Affidavits must be based on personal knowledge, which Luc's is.  See *Foster v. PNC Bank, National Association*, 52 F.4th 315, 320 (7th Cir. 2022), citing Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602.

Indeed, even if Luc's declaration is "self-serving," such testimony is usually sufficient to preclude summary judgment on discrimination or retaliation claims.  A nonmoving party's own affidavit can indeed be a legitimate method of introducing facts on summary judgment, and evidence presented in a "self-serving" affidavit or deposition is enough to thwart a summary judgment motion, unless it fails to meet the usual requirements of any other form of evidence at the summary judgment stage. *Foster*, 52 F.4th at 320; see also *McKinney v. Office of Sheriff of Whitley County*, 866 F.3d 803, 814 (7th Cir. 2017) ("[T]he [district] court was wrong to discount McKinney's testimony as 'self-serving, speculative, and conclusory.'  Our cases for at least the past fifteen years teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment."); see also *Delgado v. Smithfield Package Meats Corp.*, 2024 WL 3361579, at *13 n.22 (N.D. Ill. July 10, 2024) ("The Court rejects Smithfield's contention that Delgado's reliance on her self-serving deposition testimony and answers to interrogatories is insufficient to survive summary judgment.  Smithfield

19

does not suggest that Delgado's testimony is not based on personal knowledge or that it is otherwise inadmissible at trial.  See Fed. R. Evid. 602.  The Seventh Circuit has 'repeatedly emphasized, … the term "self-serving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.'  *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013)"); *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017) (explaining that everything a litigant says in support of a claim is self-serving, whether the statement comes in a complaint, an affidavit, a deposition, or a trial and "[y]et self-serving statements are not necessarily false; they may be put to the test before being accepted, but they cannot be ignored").

The evidence put forth by Plaintiff concerning her job performance, evolving reasons for her termination, and the separation agreement are compelling points that would likely preclude summary judgment in favor of Defendant on the issue of pretext. But it is *Plaintiff* who is moving for summary judgment, not Defendant, and Defendant has put forth sufficient facts in the form of Luc's declaration that Plaintiff was terminated due to poor job performance and/or the elimination of her position, and that Luc honestly believed those bases, so as to preclude summary judgment.

While Plaintiff may argue that she has produced a greater volume of evidence, and perhaps even more compelling evidence, than Defendant in regard to their respective arguments, it is not the court's responsibility to make credibility determinations or weigh the evidence on summary judgment.  See *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder[,]" and the motion cannot be used to resolve a swearing

20

contest between the parties.).  It is up to the jury, not a court at summary judgment, to unravel the competing narratives as to why Plaintiff was terminated.  See *Xiong*, 62 F.4th at 355.  The facts before the court do not present a situation where the evidence of pretext so overwhelms that no reasonable jury could infer that Plaintiff was terminated for non-retaliatory reasons.  See *Xiong*, 62 F.4th at 356.  Defendant has put forth enough competent evidence to create a material dispute of fact that requires a trial, and therefore Plaintiff's Partial Motion for Summary Judgment must be DENIED.

IT IS THEREFORE ORDERED THAT:

(1)    Plaintiff's Partial Motion for Summary Judgment (#23) is DENIED.

(2)    This matter is set for a final pretrial conference on July 7, 2025, at 10:45 am, and a jury trial on July 29, 2025, at 9:00 am before this court.  The final pretrial conference will be conducted via video.


ENTERED this 23rd day of December, 2024.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE